IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| EUGENE MICHAEL O'TOOLE, | |
| Plaintiff, | CIVIL ACTION NO.: 2:18-cv-121 |
| v. | FILED<br>Scott L. Poff, Clerk<br>United States District Court |
| ANDREW SAUL, Commissioner of Social Security, | *By casbell at 3:40 pm, Feb 05, 2020* |
| Defendant. | |

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Michael Stacchini ("the ALJ" or "ALJ Stacchini") denying his claim for a Period of Disability and Disability Insurance Benefits. Plaintiff urges the Court to reverse and remand the ALJ's decision for rehearing. Doc. 13 at 24. Defendant asserts the Commissioner's decision should be affirmed. Doc. 14 at 16. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## BACKGROUND

Plaintiff filed an application for a Period of Disability and Disability Insurance Benefits on August 14, 2015, alleging that he became disabled on November 2, 2014, due to post-traumatic stress disorder ("PTSD"), mood disorder, traumatic brain injury, and depression. Doc. 11-3 at 2 (R. 71). After his claim was denied initially, Plaintiff filed a timely request for a hearing. On July 11, 2017, ALJ Stacchini conducted a video hearing at which Plaintiff, who was represented by counsel, appeared and testified from Poughkeepsie, New York. Louis Szollosy, a

vocational expert, and Sharon O'Toole, Plaintiff's wife, also appeared at the hearing. Doc. 11-2 at 17 (R. 16). ALJ Stacchini found that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act") since November 2, 2014. Doc. 11-2 at 18 (R. 17). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. Doc. 11-2 at 2 (R. 1).

Plaintiff, born on March 23, 1973, was 44 years old when ALJ Stacchini issued his final decision and 41 years old on his alleged disability onset date. Doc. 11-2 at 26 (R. 25). Plaintiff has at least a high school education. Id. Plaintiff's past relevant work experience includes work as a police officer and delivery driver. Doc. 11-2 at 25 (R. 24).

## DISCUSSION

### I. The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A). Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity." Id. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Id. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and is acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform his past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity since November 2, 2014, his alleged onset date. Doc. 11-2 at 19 (R. 18).  At step two, ALJ Stacchini determined Plaintiff had arthritis of the hands, asthma, tinnitus, a hiatal hernia, obesity, PTSD, a traumatic brain injury, depression, and personality disorder, conditions which are considered "severe" under the Regulations.  Doc. 11-2 at 20 (R. 19).  However, at the third step, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment.  Id.  The ALJ found Plaintiff had the residual functional capacity to perform work at the light exertional level, with the following exceptions: avoid extreme heat, humidity, concentrated exposure to atmospheric conditions, unprotected heights, and hazardous machinery; limit to moderate sound/noise level; limit frequent handling and fingering; and simple routine tasks in a low stress job with occasional interaction with the general public, co-workers, and supervisors.  Doc. 11-2 at 21 (R. 20).  At the next step, the ALJ determined Plaintiff could not perform any of his past relevant work.  Doc. 11-2 at 25 (R. 24).  The ALJ concluded at the fifth and final step that Plaintiff could perform the jobs of router, produce weigher, and hand packager, all of which are unskilled jobs at the light exertional level and which exist in significant numbers in the national economy.  Doc. 11-2 at 26–27 (R. 25–26).

## II.     Issues Presented

Plaintiff asserts the ALJ erred by giving little weight to Plaintiff's examining psychologist's medical opinion and the Department of Veterans Affairs' ("the VA") disability findings.  Doc. 13 at 1, 4, 6.  In addition, Plaintiff argues the ALJ's failure to explicitly discuss Plaintiff's work history in evaluating whether his self-described limitations were consistent with and supported by the record requires remand.  Id. at 1, 22.

4

### III.     Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v.

Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

## IV.     Whether the ALJ Properly Considered Medical Opinion Evidence

Plaintiff asserts ALJ Stacchini did not provide good and specific reasons supported by the evidence in the case record for giving little weight to the opinion of Plaintiff's examining psychologist, Dr. Leslie Helprin, and to the VA's disability findings when assessing Plaintiff's residual functional capacity.  Doc. 13 at 9.  Rather, Plaintiff argues the ALJ improperly substituted his own lay opinion for the examining physician's opinion.  Id. at 10.  Moreover, Plaintiff argues Dr. Helprin's opinion is consistent with the medical record.  Id. at 20.  Finally, Plaintiff argues his activities of daily living do not undermine the VA's findings.  Id. at 21.

Conversely, Defendant contends substantial evidence supports the ALJ's decision to give little weight to Dr. Helprin's opinion and the VA findings.  Doc. 14 at 6.  Defendant notes that the ALJ need not defer to the opinion of an examining physician.  Id.  The ALJ determined Dr. Helprin's opinion was not consistent with Plaintiff's mental status examinations, Plaintiff's course of treatment showed improvement with group therapy, and Plaintiff demonstrated the ability to regularly attend treatment.  Id. at 7.  Thus, Defendant argues Dr. Helprin's opinion lacked support in the record and, accordingly, was entitled to little weight.  Id. at 7.  Additionally, argues Defendant, in determining Plaintiff's residual functional capacity, the ALJ relied on the opinion of Dr. M. Marks, an agency psychological consultant, which was more consistent with the record.  Id. at 13.  Defendant also asserts the VA findings are non-binding and properly discounted because such findings were based on different standards and were inconsistent with Plaintiff's activities of daily living.  Id. at 12.

6

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178–79 (11th Cir. 2011) (alteration in original) (quoting 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2)). A residual functioning capacity assessment must always consider and address medical source opinions. Indeed, if the residual functioning capacity assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. SSR96-8p. "An ALJ is not entitled to pick and choose through a medical opinion, taking only the parts that are favorable to a finding of nondisability." Kerwin v. Astrue, 244 F. App'x 880, 885 (10th Cir. 2007).

Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." Lewis, 125 F.3d at 1440. However, an ALJ need not accord as much deference to an examining physician's medical opinion. 20 C.F.R. § 404.1527(c)(2);[1] Beegle v. Comm'r of Soc. Sec., 482 F. App'x 483, 488 (11th Cir. 2012). Rather, in deciding an opinion's weight, the ALJ should consider the examining or treatment relationship, the length of treatment and frequency of examination, the nature and extent of the treatment relationship, the evidence presented by the medical source as support, the consistency of the opinion with the medical record as a whole, the medical source's specialty, and other factors. 20 C.F.R. § 404.1527(c). Yet, "[n]othing in the regulations requires the ALJ to explicitly discuss each of the factors in his or her decision." Brock v. Comm'r of Soc. Sec., 758

---

[1] The Court notes, as Plaintiff points out in his brief, that 20 C.F.R. § 404.1527 has been amended but was still in effect on the date the ALJ issued his decision in this case and continues to be in effect on appeal, as the revised Regulation applies only to applications for benefits that were filed on or after March 27, 2017. 20 C.F.R. § 404.1520c.

F. App'x 745, 750 (11th Cir. 2018).  The ALJ need only "state with particularity the weight given to different medical opinions and the reasons therefor," so that the "reviewing court can determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  Winschel, 631 F.3d at 1179 (citing to Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).  Furthermore, a decision by another governmental agency "concerning whether an individual is disabled, based on that agency's own rules, does not constitute a [Social Security Administration] decision regarding whether that individual is disabled."  Ostborg v. Comm'r of Soc. Sec., 610 F. App'x 907, 914 (11th Cir. 2015).  Although such evidence "should be considered and is entitled to great weight," it is also non-binding on the Social Security Administration and may be discounted by an ALJ who provides "specific reasons," which "show how he considered and closely scrutinized that [agency] determination."  Id. at 915 (finding substantial evidence supported ALJ's discounting of VA determination "because that determination makes no mention of [Plaintiff's] wide-ranging hobbies and interests" and because the ALJ "correctly explained the VA and [the Social Security Administration] use different criteria for determining disability").

ALJ Stacchini noted Dr. Helprin's opinion that Plaintiff has mild limitations in the ability to perform complex tasks independently due to cognitive limitations, mild limitations in the ability to maintain attention and concentration due to depression, moderate limitations in the ability to relate to others due to depression, marked limitations in the ability to maintain a regular schedule due to anxiety, marked memory limitations due to depression, marked limitations in the ability to make appropriate decisions due to psychosis, and marked limitations in the ability to deal with stress.  Doc. 11-2 at 24 (R. 23).  However, ALJ Stacchini gave Dr. Helprin's opinion little weight, citing a lack of consistency with Plaintiff's course of treatment, which "show[ed]

8

improvement with group therapy." Id. Specifically, the ALJ rebutted Dr. Helprin's diagnosis by citing to "numerous notes" which showed that during examinations, Plaintiff exhibited fair attention and concentration, spontaneous and normal speech, coherent, logical, and goal-directed thought processes, and reported experiencing no delusions, paranoia, or hallucinations. See, e.g., Doc. 11-8 at 89, 122, 131, 151, 177, 185, 191; Doc. 11-9 at 6, 63 (R. 525, 559, 566, 568, 576, 588, 614, 622, 628, 647, 703). The ALJ also observed, based on Plaintiff's course of treatment, that art therapy, group therapy, and medication improved Plaintiff's mood, and his mental status examinations remained stable, despite some ongoing negative symptoms. Id; see also Doc. 11-7 at 31 (R. 346) (mental status examination wherein Plaintiff reported doing better with medication and less irritability than before, fair attention, concentration, and judgment); see also Doc. 11-8 at 96–97 (R. 533–34) (later mental status examination showed fair attention and concentration, spontaneous and normal speech, and coherent, logical, and goal-oriented thought process while being alert and oriented; reported art therapy has had a positive effect); Doc. 11-8 at 129 (R. 566) (group psychotherapy report showed Plaintiff actively participated in discussion, provided support to other group members, and expressed interest in joining an art therapy group). Finally, the ALJ found Dr. Helprin's scheduling limitation inconsistent with Plaintiff's regular attendance at group and art therapy sessions and medical appointments. Doc. 11-2 at 24 (R. 23).

Furthermore, ALJ Stacchini assessed the VA's determination that Plaintiff is 80% disabled and unemployable. Doc. 11-8 at 52 (R. 489); Doc. 11-5 at 32 (R. 187). The ALJ explained he gave the VA determination little weight because it is based on a different legal standard, is non-binding, goes to the ultimate legal issue of whether Plaintiff is disabled, which belongs to the Social Security Commissioner, and it is inconsistent with Plaintiff's improved symptoms, evidenced by his intact mental status examinations. Doc. 11-2 at 24 (R. 23).

Additionally, the ALJ noted the VA determinations were inconsistent with Plaintiff's activities of daily living, noting Plaintiff's attendance at group sessions and doctor's appointments, which supported his ability to keep a schedule, and hobbies and interests, such as doing art projects in therapy and building remote control cars and models, which evinced Plaintiff's ability to perform dexterous work with his hands, and consuming complex programming, which showed his ability to concentrate.  Doc. 11-7 at 121 (R. 436).

Accordingly, substantial evidence supports ALJ Stacchini's residual functional capacity finding.  He explained the weight he gave medical source opinions and why he discounted those opinions in part.  ALJ Stacchini did all he was required.  This enumeration of error is without merit.

**V.    Whether Substantial Evidence Supports ALJ Stacchini's Assessment of Plaintiff's Subjective Complaints in Assessing Plaintiff's Residual Functional Capacity**

Plaintiff also contends ALJ Stacchini's evaluation of Plaintiff's subjective symptoms is deficient for failing to consider Plaintiff's purportedly stellar work history, which covers earnings in every quarter from 1991 until his alleged onset of disability and includes service in the U.S. Army with a deployment to Iraq and 13 years as a police officer.  Doc. 13 at 22–23.  Plaintiff argues the ALJ's evaluation is deficient because, as other courts have noted, "it is unlikely someone would trade in their productive, and lucrative, work career for the far less lucrative 'career' of receiving disability benefits."  Doc. 13 at 23 (citing Lafond v. Comm'r of Soc. Sec., No. 6:14-cv-1001, 2015 WL 4076943, at *9 (M.D. Fla. July 2, 2015); Stricklin v. Astrue, 493 F. Supp. 2d 1191, 1198 (N.D. Ala. 2007); Taybron v. Harris, 667 F.2d 412 (3d Cir. 1981)).  In fact, Plaintiff asserts the ALJ was "required" to consider Plaintiff's work history when evaluating his self-described limitations.  Id. at 23–24.

10

In rebuttal, Defendant states the ALJ properly found Plaintiff's subjective statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence of record. Doc. 14 at 15. Further, Defendant claims the ALJ was not required to consider Plaintiff's work history, and the lack of consideration for Plaintiff's work history provides no basis for reversal. Id.

"An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). Rather, "there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence . . . would lead to a conclusion that the individual is under a disability." Id. In evaluating the intensity and persistence of a claimant's symptoms and determining the extent to which they limit work capacity, an ALJ considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Pertinent evidence includes evidence of daily activities; the location, duration, frequency, and intensity of pain and other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment other than medication for relief of pain or other symptoms; and measures taken to relieve pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). If an ALJ fails to credit a claimant's testimony about his symptoms, the ALJ "must articulate explicit and adequate reasons for doing so." Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). This process is called a subjective symptom evaluation and is meant to

assess whether a claimant's self-described limitations are consistent with and supported by the record.  SSR 16-3p.

The subjective symptom evaluation is wholly "the province of the ALJ."  Mitchell v. Comm'r of Soc. Sec., 771 F.3d 780, 782 (11th Cir. 2014) (citing to Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005)).  Reviewing courts "will not disturb a clearly articulated [subjective symptom evaluation] supported by substantial evidence."  Id. (citing to Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995)).  Here, the ALJ made a clearly articulated finding that Plaintiff's medically determinable impairments could produce his alleged symptoms, including difficulty using his hands, pain due to his hernia, shortness of breath, sudden ringing in his ears, and mental impairments that affect his ability to persist.  Doc. 11-2 at 22 (R. 21).  Nevertheless, the ALJ found the evidentiary record contradicted some of Plaintiff's allegations concerning the intensity, persistence, and limiting effects of these symptoms.  Id.  "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," as long as the decision is not so broad as to prevent a reviewing court from concluding that the ALJ "considered [the claimant's] medical condition as a whole."  Mitchell, 771 F.3d at 782.

Regarding Plaintiff's difficulty using his hands, the ALJ cited a rheumatology consultation finding only tenderness to palpation and noted Plaintiff's hand impairment had not precluded him from participating in work around the house and preparing art.  See Doc. 11-10 at 21 (R. 810).  Additionally, the ALJ heeded Plaintiff's pain due to a hiatal hernia but noted that in the VA's Medical Records, Plaintiff did not pursue active treatment of the hernia.  See Doc. 11-8 at 50 (R. 487).  Regarding Plaintiff's shortness of breath, an x-ray of Plaintiff's chest showed no significant changes or acute problems, doc. 11-8 at 35 (R. 472), and physical examination showed no respiratory distress, doc. 11-7 at 94 (R. 409).  Moreover, the ALJ acknowledged

Plaintiff's asthma had not precluded him from certain activities of daily living, including mowing his lawn. Doc. 11-8 at 167 (R. 604). Nonetheless, certain environmental limitations were included in Plaintiff's residual functional capacity, namely, avoidance of extreme heat, humidity, and concentrated exposure to atmospheric conditions. Doc. 11-2 at 21 (R. 20). Likewise, Plaintiff's tinnitus and difficulty maintaining interest and mood swings were acknowledged in his residual functional capacity. Id; Doc. 11-2 at 24 (R. 23). Accordingly, the ALJ's subjective symptom evaluation was not a broad rejection and was otherwise supported by substantial evidence.

Plaintiff only asserts the ALJ was required and failed to address his lengthy work history in assessing his subjective symptoms. Doc. 13 at 23–24. This argument provides no basis for reversal. See Binder v. Comm'r of Soc. Sec., No. 3:17-cv-1024, 2019 WL 1397923, at *10 (M.D. Fla. Mar. 28, 2019). Although Regulations require an ALJ to consider all of the evidence, including prior work history, in formulating a residual functional capacity, nothing requires an ALJ to explicitly discuss that work history as part of a subjective symptom evaluation. See 20 C.F.R. § 404.1529; SSR 96-8p & 96-7p; see also Roane v. Berryhill, CV 116-059, 2017 WL 3613989, at *6 (S.D. Ga. July 31, 2017) ("That [the ALJ] did not explicitly state he considered Plaintiff's work history does not undermine his well-founded [subjective symptom evaluation]."). Indeed, "work history alone does not establish or even enhance a plaintiff's [subjective symptoms]." Edwards v. Sullivan, 937 F.2d 580, 584 (11th Cir. 1991) (holding ALJ's [subjective symptom evaluation] supported by substantial evidence despite plaintiff's good work history). Besides, the ALJ and Plaintiff frequently referred to Plaintiff's work history during the hearing, doc. 11-2 at 40, 41, 52 (R. 41, 42, 53), and the ALJ noted in his decision Plaintiff's earnings records, doc. 11-5 at 1–33 (R. 157–88), and past work as a police officer and

13

combat veteran. Doc. 11-2 at 23, 25 (R. 22, 24); see Binder, 2019 WL 1397923, at *10 (rejecting argument that ALJ must discuss claimant's "stellar" work history in subjective symptom evaluation because ALJ asked about work history during hearing and "could have but did not have to weigh [claimant's] work history favorably); see also Carson v. Colvin, No. CV416-083, 2017 WL 360925, at *5 n.6 (S.D. Ga. Jan. 6, 2017) (declining to "create a new standard to require an ALJ to *explicitly* discuss a plaintiff's work history as part of his [subjective symptom evaluation]" (emphasis in original)). Therefore, this Court, as many other courts before it, will not remand to require the ALJ to discuss, in explicit detail, Plaintiff's long work history. The ALJ's subjective symptom evaluation is supported by substantial evidence, and Plaintiff's enumeration of error is without merit.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 5th day of February, 2020.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA